UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN L. FRIDAY,

    Plaintiff,

v.                                            Case No. 1:08-cv-564
                                           Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI).

Plaintiff was born on December 4, 1961 and completed high school (AR 47, 56).[1] She alleges a disability onset date of April 1, 2004 (AR 47). Plaintiff had previous employment as a dishwasher (kitchen helper), cleaner and day care assistant (AR 57, 400-1). Plaintiff identified her disabling conditions as depression, pain in right knee, acid reflux and vision problems (AR 52). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on September 22, 2007 (AR 13-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health*

*and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since November 9, 2004, the date she applied for SSI (AR 15).  Second, the ALJ found that she suffered from severe impairments of depression and bi-polar disorder (AR 15).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 15).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to perform medium work except she can only occasionally crouch, kneel, and crawl. She should avoid working with hazards.  She is limited to simple, unskilled work; working [sic] involving 1, 2, or 3 step instructions; jobs that do not involve concentration on detailed/precision tasks or multiple/simultaneous tasks; that do not require her to compute/calculate, problem solve or reason; work requiring brief and superficial contact with the general public; and routine work that does not require changes or adaptations in work settings or duties more than once per month.

(AR 18).  The ALJ found that plaintiff's RFC did not preclude her past relevant work as a kitchen helper and that she was able to perform the work as actually and generally performed (AR 19). Accordingly, the ALJ determined that plaintiff had not been under a disability since November 9, 2004 (the date the application was filed) and entered a decision denying benefits (AR 19-20).

### III. ANALYSIS

Plaintiff raised two issues for review.

**A.    Was there substantial evidence of the whole record to deny disability benefits?**

First, plaintiff contends that the ALJ's finding that she could perform her past relevant work as a kitchen helper did not take into account three impairments: severe depression, multiple suicide attempts and knee dysfunction. Plaintiff's Brief at 17.

**1.    Mental impairments**

Plaintiff suffers from severe depression which restricts her ability to work. In January 2005, Leonard Balunas, Ph.D., a non-examining state psychologist, concluded that plaintiff had the following mental functional capacity assessment:

> Because of major depression, panic [disorder] [without] agoraphobia, she is moderately limited on her ability to remember and carry out detailed instructions, maintain prolonged concentration, interact appropriately [with] the general public, respond appropriately to changes in the work setting.
>
> Despite these limitations, she is able to perform unskilled work.

(AR 102-20). The ALJ addressed the limitations determined by Dr. Balunas by restricting plaintiff to simple, unskilled, routine work with only brief and superficial contact with the general public (AR 18).

In a Psychiatric Review Technique Form prepared at the same time, Dr. Balunas noted that plaintiff had thoughts of suicide (AR 110). In January 2005, plaintiff was examined by Steve Geiger, Ph.D. (AR 93-96). She reported feeling hopeless, worthless and guilty, as well as a suicide attempt at age 16 and serious suicidal thoughts "a couple of days ago" (AR 93). She did not feel suicidal on the date of the examination (AR 93). Dr. Gieger diagnosed plaintiff with major

5

depression and panic disorder without agoraphobia (AR 96). The ALJ found that the opinions of Dr. Balunas or Dr. Geiger were consistent with the ultimate finding that plaintiff was not disabled (AR 19).

However, the record indicates that plaintiff's thoughts of suicide became more frequent in the nearly 2 1/2 years that transpired between plaintiff's evaluation in January 2005 and her administrative hearing in May 2007. At a doctor's appointment on February 27, 2006, plaintiff reported that she had two suicide attempts "a month ago" and attempted to commit suicide the previous day by prescription medication overdose (AR 270). She reported that life was not worth living, wished that she was dead, and had planned on how to end her life (AR 270). The nurse observed plaintiff "scratching" her wrist furiously with a nail cutter (AR 270). A physician believed that plaintiff was suicidal and possibly homicidal (AR 274). She was involuntarily admitted to the St. Lawrence Hospital Behavioral Unit via ambulance after stating that she was "so mad" that she felt "like hurting someone" (AR 132, 274). Plaintiff stated that she intended to hurt her brother, boyfriend and herself (AR 132). She expressed a desire to use a knife or a gun to injure people (AR 132). She was discharged on March 3, 2006, with prescriptions for a number of medications (Prozac, Toprol XL, Depakote ER, Abiligy and Prilosec), orders to follow-up with her outpatient therapist, and to have her Depakote level drawn by a psychiatrist (AR 133-34). In February 2007, plaintiff was being treated by a psychiatrist and a counselor (AR 243). At this time, plaintiff reported to a physician that she had occasional suicidal ideation but no active plans or attempts (AR 243). Plaintiff reported that she locks her medication in a closet and has two "suicide contracts" which she reviews "whenever she has suicide ideation" (AR 244). Finally, at her administrative

6

hearing held on May 22, 2007, plaintiff testified that she attempts suicide once or twice a week, and had attempted suicide within a week of the hearing (AR 391).

Plaintiff's February 2006 involuntary hospitalization, her history of reported suicide attempts to health care providers, and her testimony of weekly suicide attempts, indicates to the court that plaintiff has a pre-occupation with suicide. *See, e.g., Lankford v. Sullivan*, 942 F.2d 301, 308 (6th Cir. 1991) (observing that repeated suicide attempts could be evidence of a "marked" functional impact on a claimant's daily functioning). While the ALJ recounted plaintiff's recent history of suicide attempts, he did not address this issue in any detail. Rather, the ALJ apparently relied on the assessments by Drs. Balunas and Geiger, stating that "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision" (AR 19). The court finds this reasoning unpersuasive. Given the apparent decline in plaintiff's mental condition since her evaluation in January 2005, it appears to the court that the opinions of Drs. Balunas and Geiger, while apparently valid, were outdated. At that time, plaintiff did not have a history of an involuntary hospitalization, did not express the desire to commit suicide on a weekly basis and did not need to review "suicide contracts." The ALJ's decision is not supported by substantial evidence, because he failed to address the extent of plaintiff's suicidal tendencies post-January 2005. Accordingly, this matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of plaintiff's mental condition, specifically the apparent deterioration of that condition since January 2005.

### 2. Plaintiff's knee impairment

At the administrative hearing, plaintiff did not identify any restrictions related to her knee. Plaintiff testified that she could stand for about one hour at a time, lift 50 to 55 pounds while standing, walk two or three blocks at a time, and sit for a couple of hours at a time (AR 392). This testimony is inconsistent with plaintiff's report to an examining physician, Elaine Koutanis, M.D. in January 2005, at which time plaintiff stated that she could only stand for 15 minutes before her knee would "lock up" (AR 16, 97-99). However, plaintiff was able to perform all of the orthopedic exercises on the examination questionnaire (AR 99). The doctor characterized plaintiff's main complaint as being pain in the right knee with prolonged standing and sitting (AR 99). Based on her examination, Dr. Koutanis suspected a right medial meniscus tear (AR 99). In June, 2005, plaintiff underwent arthroscopic surgery to repair a torn meniscus (AR 16, 228-34). The ALJ took plaintiff's knee problem into account when he limited her to only occasional crouching, kneeling and crawling (AR 18). These limitations are consistent with the physical RFC assessment prepared by the non-examining DDS physician (AR 121-28). Based on this record, it the court concludes that substantial evidence supports the ALJ's limitations regarding plaintiff's knee.

### B. Did the ALJ err in failing to ask hypothetical questions based on impairments found in the record for multiple suicide attempts, severe depression, and knee dysfunction?

Plaintiff contends that the ALJ's hypothetical question posed to the vocational expert (VE) is defective for failing to address plaintiff's severe depression, suicide attempts and knee dysfunction. Plaintiff's Brief at 19. Plaintiff's contention, as briefed, is without merit. The ALJ denied plaintiff's claim at the fourth step of the sequential evaluation, after determining that she could perform her past relevant work as a kitchen helper (AR 19). It is the claimant's burden at the

fourth step to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). A VE's testimony is not required to support an ALJ's finding that a claimant is not disabled at step four. *See Banks v. Massanari*, 258 F. 3d 820, 827 (8th Cir. 2001) (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Secretary of Health and Human Servs.*, No. 90-2084, 1991 WL 100547 at *3 (6th Cir. June 11, 1991); *Rivera v. Barnhart*, 239 F. Supp. 2d 413, 421 (D. Del. 2002). However, the ALJ may use a vocational expert's services in determining whether a claimant can perform his past relevant work. 20 C.F.R. § 404.1560(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). *See, e.g., Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding whether the claimant can perform his past relevant work at step four of the evaluation).

Here, the ALJ used the VE's testimony to assist in determining whether plaintiff could perform any of her past relevant work. The ALJ's hypothetical question consisted of the following limitations:

> Let's assume a hypothetical individual who could meet the demands of medium work. Should only occasionally crouch, kneel or crawl. Should avoid exposure to hazards. Should only have simple unskilled work with an SVP rating of 1 or 2, should have only jobs requiring one-, two- or three-step instructions, should have no jobs which would require concentration on detailed or precision tasks or multiple and simultaneous tasks. Should have no jobs that require the individual to compute, calculate, problem solve or reason. Should have work that would require only brief or superficial contact with the general public, and work that would not require changes or adaptation in the work settings or do this more than once per month.

9

(AR 402).  Based on this hypothetical, the VE testified that such a person would be able to return to the position as a kitchen helper (AR 402).

The ALJ's hypothetical question addressed plaintiff's knee problems by limiting her to only occasional crouching, kneeling or crawling.  The ALJ also addressed plaintiff's cognitive impairments as identified by the Drs. Balunas and Geiger, by limiting plaintiff to simple, unskilled work involving only brief, superficial contact with the general public.  The only deficiency in the question posed to the VE would be the failure of the ALJ to address any additional restrictions caused by plaintiff's history of suicide attempts.  For the reasons stated above, the ALJ failed to properly evaluate the limitations, if any, posed by plaintiff's post-January 2005 suicidal thoughts.  For this reason, the ALJ's determination at step four of the sequential evaluation is not supported by substantial evidence.  Accordingly, if the ALJ determines that plaintiff's history of suicide attempts and suicidal thoughts indicate additional limitations, then the ALJ will need to re-evaluate whether plaintiff retains the ability to perform her past relevant work as a kitchen helper.

### IV.    Recommendation

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of plaintiff's mental condition since January 2005, and, if necessary, a re-evaluation of her ability to perform her past relevant work.


Dated: June 8, 2009                                           /s/ Hugh W. Brenneman, Jr.
                                                              HUGH W. BRENNEMAN, JR.
                                                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).